■ MARJORIE FRANKEL, Respondent-Appellant, v RAYMOND FRANKEL, Appellant-Respondent.—In an action, *inter alia,* to recover damages for breach of an agreement and stipulation of settlement of an action for a divorce, (1) the defendant husband appeals from a judgment of the Supreme Court, Westchester County (Marbach, J.), dated October 28, 1986, which is in favor of the plaintiff wife and against him in the sum of $147,813 in settlement of the plaintiff's remaining financial interest in the marital residence, and, as limited by his notice of appeal and brief, from so much of an order of the same court, entered January 23, 1987, as denied the defendant's motion for renewal, and (2) the plaintiff cross-appeals (1) from so much of the judgment as gave the defendant a credit for payments made by him to maintain the marital residence, and (2) so much of the order as denied her cross motion for renewal.

Ordered that the judgment is reversed, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for a hearing and further proceedings consistent herewith; and it is further,

Ordered that the appeal and cross appeal from the order are dismissed as academic, without costs or disbursements.

The parties were divorced by judgment entered May 21, 1982. On May 18, 1982, they had entered into a written stipulation of settlement. Pursuant to article VIII-A of that agreement, the wife deeded her interest in the marital residence to the husband for the sum of $500,000. Paragraph 4 of article VIII-A provided for "additional monies" to be paid to the wife upon the occurrence of any 1 of 3 alternative events. Under this section of the agreement the husband was to have the option of selling the house and paying the wife a portion of the profits or retaining ownership and residing in the premises. If he retained ownership past September 15, 1985, a hypothetical sale was to occur pursuant to paragraph 4 (C) of article VIII-A , with the plaintiff receiving "a sum equal to one-half the difference between $1,000,000 and the net amount that would have been received after allowance for brokers' fees, legal expenses and application *[sic]* capital gains and other taxes had the home been sold for $1,500,000, such sum to be known as 'the attributable sales price' ". The agreement further provided that "there shall be deducted from the sum the Wife would otherwise receive a sum equal to one-half of the actual net costs and expenses of maintaining the house between the date of the Wife's removal and the date the

'attributable sales price' of the property is *fixed"* (emphasis supplied).

Initially the plaintiff commenced this action alleging that a paragraph other than paragraph 4 (C) of article VIII-A should determine the parties' respective rights. The defendant moved for summary judgment, and the Supreme Court, Westchester County (Marbach, J.), by order entered May 1, 1986, declared the rights of the parties with respect to the agreement, found that paragraph 4 (C) was the provision to be applied, and ordered the parties to submit accountants' calculations so the court could fix the amount due the wife. The plaintiff did not appeal from this order and therefore apparently conceded that paragraph 4 (C) was the applicable clause.

Each party submitted calculations. The plaintiff's accountant found that there should be no allowance for capital gains taxes because under paragraph 3 of article XX of the agreement the husband was "to indemnify and hold the Wife harmless from the payment of any such taxes" (i.e., capital gains). Further, the plaintiff's calculations made no provision for the costs of maintaining the property.

In contrast, the defendant's accountants arrived at a theoretical capital gains tax liability of approximately $254,000 and calculated that the wife's share of expenses of maintaining the house was in excess of $72,000. This computation resulted in a net payment of zero for the wife.

The Supreme Court held that there should be no allowance for capital gains taxes because under paragraph 3 of article XX the "defendant husband has agreed to hold the plaintiff harmless from capital gain consequences". As to the allowance for the expenses of maintaining the house the Supreme Court found that "the intent of the parties [was] to charge plaintiff with a share of the costs incurred to maintain the physical and legal integrity of the property" but not with those costs directly related to the defendant's "use and enjoyment of the property". Therefore, the wife's share of these costs was reduced to $51,687.

On appeal, the defendant argues that the Supreme Court erred when it failed to include any allowance for capital gains taxes since paragraph 4 (C) of article VIII-A specifically provided for such an allowance, regardless of the provisions of article XX. The plaintiff claims that the Supreme Court included several questionable expenses in its calculations with regard to the costs of maintaining the property and, in any case, she was not required to share in the maintenance costs

past September 15, 1982, because, pursuant to paragraph 4 (C) of article VIII-A, this was the date on which the attributable sales price was *fixed*.

At first blush there appears to be an inconsistency between the provision allowing a deduction for capital gains taxes and the provision making the husband solely responsible for the payment of all such taxes. However, the discrepancy is illusory. A reading of article XX, which is entitled "Income Tax Returns", reveals that its purpose was apparently to facilitate the filing of such returns once the parties were divorced. Under that article the husband was to individually pay any capital gains taxes "arising out of the transactions between the parties, or between either or both of the parties and others * * * and to indemnify and hold the wife harmless from the payment of any such taxes". It is highly unlikely however that the plaintiff will incur any capital gains liability under the article VIII-A sale since she is no longer the owner of the capital asset to be sold. Since she transferred her ownership interest in the marital residence to the husband shortly after he paid her the initial $500,000 pursuant to article VIII-A, any sale pursuant to paragraph 4, whether real or theoretical, would have capital gains consequences to the husband alone.

Although the plaintiff may not incur any capital gains liability as a result of the payment she received, the clear language of article VIII-A would require that the defendant be given a credit for the capital gains taxes theoretically incurred by him since the theoretical sale would be by the husband to a third person and article XX was applicable only if an actual sale occurred, and capital gains taxes were incurred and payable to the Government. Further, in determining the capital gains tax liability it was the intent of the parties to treat the theoretical sale as if only a profit of $500,000 was realized. This is clear from the wording in paragraph 4 (C), which provides that the net amount payable is to be the difference between $1,000,000 and $1,500,000, less allowable expenses.

Therefore, this matter is remitted to the Supreme Court for a hearing to compute the defendant's theoretical capital gains liability as to this theoretical sale. Article VIII-A makes it clear that it was the intent of the parties that the wife would receive additional money for her interest in the marital residence. Accordingly, the amount of the defendant's theoretical capital gains taxes should be computed in such a way as

to minimize his tax liability, and to maximize the payment due the plaintiff.

With respect to the plaintiff's liability for a portion of the residential maintenance costs for the period of September 15, 1982 through September 15, 1985, we initially note that contrary to the plaintiff's contention, we find that she is responsible for one half of the expenses necessary to maintain the physical and legal integrity of the premises. Her contention that the "attributable sales price" was fixed on September 15, 1982, is without merit. Article VIII-A clearly indicates that the "price" did not become fixed until September 15, 1985, the date on which the defendant was required to comply with paragraph 4 (C), since he had not previously sold the house pursuant to paragraphs 4 (A) or 4 (B).

However, we find that upon remittitur, the hearing should encompass the issue of the monetary amount the plaintiff owes for the maintenance costs. As noted by the plaintiff, certain repair expenses submitted by the defendant, to wit, the replacement of a television antenna, a fixture replacement, and a $10,000 item for "various repairs", may not have been incurred to maintain the physical and legal integrity of the premises, and the defendant's entitlement to receive a portion of those expenses should be established by him. Additionally, the expense for real estate taxes should be recomputed to take into account the income tax deductions the husband received during the three-year period, so as to arrive at the "actual net costs and expenses" of maintaining the premises. Thompson, J. P., Lawrence, Rubin and Spatt, JJ., concur.